

FILED
2011 Aug-31  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDDIE LEE RIGGS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-1807-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Eddie Lee Riggs ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Plaintiff filed his application for Title II disability insurance benefits and

Tile XVI Supplemental Security Insurance ("SSI") on January 29, 2007, alleging a disability onset date of November 23, 2005, from back and neck injuries sustained in a motor vehicle accident, ankle problems, and high blood pressure.  (R. 136, 174).  After the denial of his applications on April 24, 2007, (R. 90), Plaintiff requested a hearing before the ALJ on September 14, 2007, (R. 101), which occurred almost two years later, on April 9, 2009.  (R. 39-82).  At the time of the hearing, Plaintiff was 53 years old with a twelfth grade education.  (R. 52). Plaintiff has not engaged in substantial gainful activity since November 23, 2005, one year prior to the alleged onset date of disability of October 4, 2006.  (R. 131). His past relevant work included light and semi-skilled work as a security guard, and medium and semi-skilled work as a donut cook and forklift driver.  (R. 75).

On August 12, 2009, the ALJ denied Plaintiff's claims, (R. 5-16), which became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review.  (R. 1-4).  Plaintiff then filed this action for judicial review pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3), doc. 1, alleging that he is disabled due to cardiac impairments (acute myocardial infarction in 2005), (doc. 8 at 16), a mental impairment, (*id.* at 13), and severe pain, (*id*. at 9).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national
        economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

     Lastly, where, as here, Plaintiff alleges disability because of pain, he must

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761
F.2d 1545, 1548 (11th Cir. 1985).

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, neither requires objective proof of the pain
> itself. Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself. *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added). Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, he

must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for
> refusing to credit a claimant's subjective pain testimony, then the [ALJ], as
> a matter of law, has accepted that testimony as true. Implicit in this rule is
> the requirement that such articulation of reasons by the [ALJ] be supported
> by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

Plaintiff contends that the ALJ's decision that he is not disabled is not supported by substantial evidence and asks this court to overturn the decision. The court disagrees and, for the reasons stated below, finds that the ALJ's decision is supported by substantial evidence.  As a threshold matter, the court notes that the ALJ properly applied the five step analysis.  Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 4, 2006, and therefore met Step One.  (R. 10).  The ALJ acknowledged that Plaintiff's combination of severe impairments of hypertension, degenerative changes in the cervical spine, and history of alcohol abuse met Step Two.  *Id*.  The ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three since his impairments or combination of impairments neither met nor equaled the requirements for any listed impairment.  *Id*.  As it relates to Step Three, the ALJ found also that Plaintiff's mental impairment did not meet or medically equal the criteria in Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders), paragraph B or paragraph C, and that Plaintiff had only moderate restrictions in activities of daily living, moderate difficulties in social functioning

and concentration, persistence, or pace, and that he had not had any episodes of

decompensation for an extended duration.  (R. 11).  Although he answered Step

Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the

ALJ proceeded to Step Four where he determined that Plaintiff had the residual

functional capacity ("RFC") to perform light and unskilled work "except no

exposure to unprotected heights, dangerous machinery or other hazards," (R. 11),

and that the "assessment reflects the degree of limitation the undersigned has

found in the 'paragraph B' mental function analysis."  (R. 11).  Further, the ALJ

held that Plaintiff could not perform his past relevant work as a light and semi-

skilled security guard, or as a medium and semi-skilled donut cook and forklift

driver because he is "limited to less than a full range of unskilled light work."  (R.

14).  Lastly, in Step Five, the ALJ considered Plaintiff's age, education, work

experience, RFC, and impairments, and determined that there are a significant

number of jobs in the national economy that Plaintiff can perform.  *Id*.  Because

the ALJ answered Step Five in the negative, the ALJ determined that Plaintiff is

not disabled.  (R. 15); *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

The court turns now to Plaintiff's contentions.  Specifically, Plaintiff

contends that the ALJ erred in finding that he was not disabled because his mental

impairment, drug regimen, ankle and neck pain, and cardiac condition prevent him from performing a full range of light or sedentary work.  Doc. 8 at 9, 13.  Plaintiff contends further that his "cardiac impairments were severe, but not fully documented due to omission of records which were not included in the file," *id.* at 16, and moved this court for leave to file the records under seal so that they could be "made a part of the record as they are relevant to [Plaintiff's] cardiac condition, doc. 11 at 2.  The court turns first to Plaintiff's contentions about his purported incomplete medical file and then to his specific contentions about the errors the ALJ purportedly made.

A.    *Plaintiff's Motion for Leave to File HealthSouth Metro WestMedical Records*

On January 31, 2011, Plaintiff filed a motion for leave to supplement the medical evidence with his medical records from HealthSouth Metro West Hospital, asserting that they were not available at the administrative level and "are relevant to his cardiac condition."  Doc. 11 at 2.  Because the court can review new evidence not submitted at the administrative level only to determine if remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g), which provides the "sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court," *Ingram v. Astrue*, 496

F.3d 1253, 1267 (11th Cir. 2007), the court granted the motion for that purpose.

Thereafter, after Plaintiff submitted the records, the court viewed them to ascertain if they satisfy the requirements for a sentence six remand, i.e., whether the evidence (1) is new and noncumulative, (2) is "material" such that there is a reasonable probability that it would change the administrative result, and (3) was not submitted at the administrative level for good cause.  *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986); *see also Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).  However, the court discovered that the "new" medical documents were, in fact, a part of the record at the administrative level.  Indeed, these same documents appear at pages 329 (exhibit 9F), 346 (exhibit 12F), and 362 (exhibit 13F) of the record.  Significantly, the ALJ considered them in rendering her decision:  "An EKG on April 1, 2009 was unremarkable (Exhibits 8F-10F)," (R. 13), and "The claimant was released in stable condition with a diagnosis of hypertension, cervicalgia and lumbago (Exhibits 1F-2F and 12F-13F)," (R. 12).  Therefore, contrary to his contention, Plaintiff submitted *and* the ALJ considered this purported "new" evidence at the administrative level.  Accordingly, a sentence six remand is not warranted here.

B.    *The ALJ's finding that Plaintiff is not disabled is supported by substantial evidence.*

Plaintiff contends next that the ALJ erred because she failed to "combine [Plaintiff's] mental problems with his other non-exertional impairments, but rather addressed them in isolation" in concluding that he "could work a full-time job of 'light' unskilled labor." Doc. 8 at 9.  This argument also lacks merit.

1.    Mental Impairment

To support his contention that he has a mental impairment which, in combination with his other impairments, prevents him from performing light work, Plaintiff cites as evidence that he testified inaccurately and dishonestly, cannot remember time frames, and provided non-responsive answers to unsolicited questions at the hearing.  Doc. 8 at 10.   However, there is nothing in the record showing an <u>actual</u> diagnosis of a psychological condition.  Therefore, to the extent that Plaintiff is claiming he is disabled based on an undiagnosed psychological condition, his claim fails because he failed to prove that he actually suffers from a severe mental impairment.

Alternatively, the mental claim fails also because the ALJ considered Plaintiff's mental limitations in assessing his RFC of light work.  (R. 11). Specifically, the ALJ stated that Plaintiff received two psychiatric reviews, and

found that neither revealed any mental impairments.  The first review occurred on April 19, 2007, when Dr. Frank Nuckols completed a psychiatric review of the records from Cooper Green Hospital and other symptoms, signs, and laboratory findings, (R. 283), and determined that Plaintiff has a medically determinable impairment of alcohol abuse.  (R. 291).[2]  Dr. Nuckols also met with and evaluated Plaintiff and concluded that he has a mild degree of limitation of daily activities, social functioning, and maintaining concentration, persistence, and pace.  (R. 293). Dr. Nuckols opined that Plaintiff had no decompensation episodes and did not meet Listings 12.02 (Organic Mental), 12.03 (Schizophrenic, etc.), 12.04 (Affective), or 12.06 (Anxiety-Related).  (R. 293-294).   Moreover, Dr. Nuckols noted that although Plaintiff reported depression due to pain, the medical file did not indicate that Plaintiff had any psychiatric impairments, prescribed medications, or hospitalizations for depression or other psychiatric conditions.  (R. 295). Finally, Dr. Nuckols reported that the face to face interview demonstrated that Plaintiff had "normal coherency, understanding and concentration."  *Id*

Significantly, despite Dr. Nuckols' findings that Plaintiff was not mentally disabled, the ALJ requested a second psychiatric review after the hearing, and

---

[2] Plaintiff reported to Dr. Nuckols that he drinks alcohol twice per week, but that it does not impair his ability to function.  (R. 295).

referred Plaintiff for a psychological consultative exam with licensed clinical psychologist, Dr. Cynthia Neville.  (R. 81).  Dr. Neville evaluated Plaintiff on June 13, 2009, and diagnosed him with alcohol dependence (by history) and hypertension, hypercholesterolemia, gastroesophageal reflux disease, and arthritis (client report).  (R. 342).  Dr. Neville found that Plaintiff's "reports regarding his substance abuse issues [alcohol and cannabis] were suspect and contradicted by his medical records."  *Id*.  Rather, Dr. Neville opined that Plaintiff "appeared to possess the cognitive abilities to understand, remember, and follow through with simple, routine work instructions" and that his "ability to interact appropriately with coworkers and supervisors did not appear to be impaired significantly although substance abuse issues might negatively impact [Plaintiff's] abilities." (R. 342; *see also* 343-44).

The two psychological evaluations in the record clearly refute Plaintiff's contention that he has a mental impairment.  Moreover, in addition to the findings of the psychological reviews, the record evidence does not support Plaintiff's assertion that his mental condition prevents him from performing light work.  In fact, the intake reports from his various hospital evaluations describe Plaintiff as cooperative, oriented, alert, and as possessing an appropriate mood, (R. 214, 230, 330, 341), all of which further belie his contention that he has a mental

impairment.  In short, based on Drs. Nuckols' and Neville's reports, and the record

evidence, the ALJ did not err in her consideration of Plaintiff's mental limitations

in determining that he could perform light work.

    2.    Pain

    Plaintiff contends next that his pain, in addition to his medical impairments,

"precludes light work of any kind in the national economy."  Doc. 8 at 9.

Specifically, Plaintiff states that he has "medically determinable impairments from

his two on-the-job injuries beginning in 1986, his broken right ankle, and the

whiplash injury from the car wreck," resulting in pain measuring an 8 out of a 10

severe scale, and rendering him unable to perform light work.  Doc. 8 at 12.

    To evaluate Plaintiff's pain contention, the court turns to his medical file.

The court notes that on July 7, 1986, Plaintiff was seen at the University of

Alabama at Birmingham Hospital ("UAB") complaining of low back pain lasting

two days.[3]  (R. 330, 332).  UAB discharged him that same day with instructions to

get bed rest, heat the affected area, take his medications as prescribed, and to

follow up with an orthopaedic surgeon if the pain persists.  *Id*.

---

    [3] Based on the court's review of the record, there is no medically documented evidence of
Plaintiff's job injuries in 1986, or subsequent chronic pain as a result of those injuries.  Clearly
the ALJ could not consider an alleged impairment absent medical evidence.  Therefore,
Plaintiff's contention regarding impairments due to job injuries sustained in 1986 is without
merit.

The next reference to pain in the record occurred over ten years later when, on October 6, 2006, Plaintiff visited Cooper Green Hospital ("Cooper Green") for injuries he sustained in a motor vehicle accident.  (R. 227).  Plaintiff's chief complaint was "neck and back 'sore,'" and headache, (R. 227, 229), and rated his pain as 8 on a 10 point scale.  (R. 226).  The x-ray of his neck and lumbosacral spine was negative, (R. 231-32), and Cooper Green discharged him after giving him Clonidine to treat high blood pressure and Tramadol to treat moderate to severe pain.  (R. 230, 326).

Six months later, on March 17, 2007, Dr. Clay Rainer conducted a consultative examination.  (R. 245-248).  Plaintiff's chief complaint was neck and back pain from injuries sustained in the October 2006 motor vehicle accident.  (R. 245).  Plaintiff reported that the prescribed medications Cooper Green gave him were ineffective and that he had not taken any prescribed medications for the last several months.  *Id*.  Dr. Rainer observed Plaintiff to be a "poor historian" and "difficult to understand."  *Id*.  Dr. Rainer noted that Plaintiff was "independent with activities of daily living" and "spends his day doing light housework as tolerated with frequent breaks," (R. 245), takes ibuprofen for pain, (R. 246), and that Plaintiff was not taking any prescribed medications even though Plaintiff needed to take high blood pressure medication, (R. 246).  As it relates to

Plaintiff's complaints of pain, Dr. Rainer opined that Plaintiff "appears in no

apparent distress, and even with report of pain, he does not appear to be in pain."

*Id*.  Dr. Rainer diagnosed Plaintiff with "chronic neck and low back pain, most

likely secondary to muscle sprain/strain type injury."  (R 248).

Ten days later, on March 27, 2007, Plaintiff was admitted to Cooper Green

Hospital complaining of chest pains.  (R. 253).  Cooper Green discharged Plaintiff

on March 30, 2007, and diagnosed him with, among other things, chronic back

pain and marijuana abuse.  (R. 255).  The discharge summary noted also that

Plaintiff was not taking any medication.  (R. 253).  He was prescribed Tramadol as

needed for pain and instructed to follow up with a primary care physician in three

to four weeks.  *Id*.

Plaintiff visited Dr. Shirin Banu on April 18, 2007, (R. 321), December 6,

2007, (R. 311), April 1, 2008, (R. 309), April 29, 2008, (R. 308), and July 22,

2008, (R. 338).  During each visit, Plaintiff complained of low back pain, *id*., but

reported that he lifted weights as part of his exercise regimen - which, the court

notes, undermines his contention that he is disabled.  For example, on the April

18, 2007, Dr. Banu advised Plaintiff to walk for exercise and to stop lifting

weights for one month.  (R. 321).  On December 6, 2007, Dr. Banu prescribed

Plaintiff Naprosyn for pain and instructed him to return for a follow up visit in two

and one half months.  (R. 311).  On April 1, 2008, Dr. Banu noted that Plaintiff

had not returned for his follow up visit for four months, and that he has "chest pain

[ ] secondary to lifting weights; adviced [sic] to stop."  (R. 309).  During the

April 29, 2008, visit, Dr. Banu commented that Plaintiff was "non-compliant to

meds," and referred him to a patient assistance program.  (R. 308).  On April 1,

2008, Plaintiff received a complete spine radiographic series that revealed minimal

degenerative changes at C4-5 and C5-6.  (R. 335).  Finally, on July 22, 2008, Dr.

Banu noted again that Plaintiff's alcoholism was in remission, that he was

noncompliant with his medication, and again noted that he had chest pain

secondary to lifting weights.  (R. 338).

　　　Based on this court's review of the record, the medical evidence does not

support Plaintiff's assertion that his pain prevents him from performing light work.

As an initial matter, the court finds that Plaintiff fails to meet the pain standard

because he cannot show the existence of an underlying medical condition that

reasonably would be expected to produce disabling pain.  *Holt*, 921 F.2d at 1223.

Although Plaintiff has consistently reported neck and back pain, his x-rays in 2006

and 2008 were negative.  Consulting physician Dr. Rainer opined that Plaintiff's

condition was characteristic of pain secondary to a muscle sprain/strain injury and

his treating physician, Dr. Banu, attributed Plaintiff's pain to his weight lifting and

advised Plaintiff to stop.  Significantly, the record shows that Plaintiff has a history of non-compliance with his follow up appointments and taking his prescribed medications, and complained only once that his medication did not alleviate his pain.  Plaintiff's ability to engage in daily activities of light house work (washing dishes, doing laundry, and cleaning the bathroom), and visiting with neighbors, (R. 14, 67), demonstrates that he can, in fact, perform light work. Indeed, even after Plaintiff's last date of employment on November 23, 2005, he testified to engaging in an exercise regimen that includes lifting 10-20 pound weights.  (R. 66).  These are hardly the activities of someone whose distress prevents him from performing light work.  Therefore, the court finds that the ALJ's finding that Plaintiff has the ability to perform light work is supported by substantial evidence.

   3.   Cardiac Impairment

   Plaintiff contends next that the ALJ failed to properly consider his cardiac impairments, and that these impairments, including a heart attack he suffered in February 22, 2005, meet or equal the listing for chronic heart failure and ischemic heart disease and render him incapable of performing light work.  Doc. 8 at 16-18. Again, Plaintiff failed to provide any medical evidence to support his contention that he has a heart impairment.  Doc. 8 at 16.  Therefore, to the extent Plaintiff

contends that the ALJ erred by not considering medical conditions not reflected in the record evidence, his claim fails.

Moreover, even when the court considers the arguable cardiac conditions reflected in the record, Plaintiff's claim still fails.  Specifically, the record evidence shows Plaintiff was repeatedly diagnosed with and treated for hypertension, hyperlipidemia, and chest pain.  (R. 215, 253, 308, 309, 311, 321, 347, 370, 386).  However, Listing 4.02A2, Chronic Heart Failure, requires first "diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm."  20 C.F.R. Part 404, Subpt. P, App. 1, § 402 (emphasis added). Unfortunately for Plaintiff, there is no such imaging medical evidence demonstrating chronic heart failure in the record.  Therefore, Plaintiff failed to meet his burden of showing that he satisfies  Listing 4.02A2.

Likewise, Plaintiff does not meet Listing 4.04A, Ischemic Heart Disease, because the record does not demonstrate that he has a 1) limited exercise tolerance test manifesting one of the four necessary requirements, (2), three separate ischemic episodes, each requiring revascularization or not amenable to revascularization, or (3) coronary artery disease.  In fact, the record does not even support a finding of ischemic heart disease.  Specifically, the court notes that

Plaintiff was admitted to HealthSouth Hospital on November 6, 2001, complaining of chest discomfort, and was diagnosed with hypertension and tobacco abuse. (R. 370). During the hospitalization, Dr. Ray Workman conducted a cardiology consultation and noted that Plaintiff (1) "was on no medications on admission," (2) had a regular heart rate and rhythm, (3) had multiple cardiac risk factors and an abnormal electrocardiogram ("EKG"), and (4) will receive counseling regarding tobacco cessation. (R 387). The next day, Plaintiff received a low Sestamibi stress study that concluded (1) probably normal gated Sestamibi study, (2) normal perfusion visualized, and (3) minimally depressed left ventricular systolic function. (R. 401). Prior to his discharge on November 8, 2001, he was observed "ambulating the hallway without difficulty" and his "blood pressure was controlled." (R. 371). Significantly, the discharge summary noted that Plaintiff's "cardiac enzymes were negative for acute ischemia." (R. 370).

The next notation in the record about cardiac activity occurred four and a half years later on March 3, 2006, when Plaintiff sought treatment at UAB Medical West for a cough and trouble breathing. (R 213). His chest x-ray results noted that his heart was not enlarged, his lungs were clear, and that the study was "unremarkable." (R. 215). The EKG report noted that the "QRS complexes otherwise do not reveal any significant prior infarcts. The ST segments appear to

be isoelectric.  There are some T-wave inversions, however, that are indicative of

possible lateral ischemia as the T-waves are inverted in leads I, AVL and V4

through V6.  Clinical correlation is required." (R. 220).  However, there is nothing

in the record relating to the clinical correlation that would support a finding by the

ALJ or this court of a lateral ischemia.

A year later, Plaintiff was again admitted to Cooper Green Hospital on

March 27, 2007,  complaining of blood pressure problems.  (R. 260).  The

admission worksheet noted that Plaintiff "has run out of medicines."  *Id.*  The next

day, on March 28, 2007, Plaintiff's received a cardiology test which determined

that he had a "normal dipyridamole spect myocardial perfusion" and his left

ventricle wall thickness and size were normal.  (R. 266).  That same day, Plaintiff

received a "persantine sestamibi stress test to evaluate chest pain," which resulted

in "clinically negative and electrically indeterminate persantine stress test."  (R.

267). Finally, on March 29, 2007, the day he was discharged, Plaintiff received an

echocardiography which revealed left ventricular hypertrophy, but was otherwise

unremarkable. (R. 265).

As is evident, the record does not support Plaintiff's contention of a

condition that meets or equals the listing for chronic heart failure or ischemic heart

disease.  Significantly, the ALJ considered Plaintiff's hypertension and his

medical records in determining that he could perform light work.  (R. 10).  As the

ALJ noted, Plaintiff's cardiac examinations, tests, and x-rays were negative for

other potentially severe impairments, and he was often noncompliant with his

medication.  (R. 12, 13).  In fact, most of Plaintiff's hospitalizations occurred

when he was not taking his prescribed medications.  In any event, there is nothing

in the record to support Plaintiff's contention that he cannot perform light work

because of a cardiac condition.

    4.    Drug Regimen

Plaintiff contends that the side effects of his prescribed drug regimen,

including drowsiness, dizziness, chest pain, fainting, abnormal psychosis, and

unusually fast or slow heart beat, in combination with his mental and non-

exertional impairments, prevent him from performing light duty work.  Doc. 8 at

13-14.  However, Plaintiff has not presented any objective medical evidence to

establish that taking the drug regimen qualifies as a severe impairment.  Instead,

he describes simply the potential side effects of the drugs and relies on this

evidence that he has a severe limitation.   This, however, is not the relevant

standard for a disability determination.  While Plaintiff's daily prescribed drug

regimen includes several medications that have adverse side effects, he failed to

establish, through objective medical evidence, that he in fact has these residual

symptoms or how they render him disabled.  Absent this evidence, he simply cannot make the critical showing that the ALJ erred by rejecting objective evidence he presented about the purported debilitating effects on him from his medications.  Because Plaintiff failed to meet his burden of proving that he actually suffers from severe, limiting affects of his medications, the court finds that the ALJ did not err in failing to include as a severe impairment the purported side effects of his medications.

> 5.     All of the above impairments in combination

Finally, Plaintiff contends that the ALJ erred when she did not consider his drug regimen and mental and non-exertional impairments in combination.  Doc. 8 at 9, 13.  For the same reasons noted previously, this argument fails also.  Indeed, the record evidence does not indicate that Plaintiff has a mental or cardiac condition that meets a Listing or that he has any disabling side effects from medications.  Further, Plaintiff's hypertension and back and neck pain are exacerbated by his noncompliance in taking his prescribed medications or to follow up with his doctor's appointments.  Whether in combination or isolation, the record evidence does not support that Plaintiff's impairments prevent him from

performing light work.[4]

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination.  The

Commissioner's final decision is, therefore, **AFFIRMED**.  A separate order in

accordance with this memorandum of decision will be entered.

Done the 31st day of August, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff contends also that his "manual dexterity render[s] him incapable of working full time in the national economy."  Doc. 8 at 15.  However, there is simply no evidence in the record to support this contention.  *See* 20 C.F.R. § 416.912(a) ("[Plaintiff] must furnish medical or other evidence that we can use to reach conclusions about your medical impairment(s).").